HILLMAN'S v. EM 'N AL'S.

1. USURY—DEFINITION.
Usury is, generally, the receiving, securing or taking of a greater sum or value for the loan or forbearance of money, goods, or things in action than is allowed by law.

2. SAME—STATUTES.
The usury statute includes interest not only on the loan of money or the extension of pre-existing debts, but also on all contracts and assurances (CL 1948, § 438.51 *et seq.*).

3. SAME—PLEADING.
Pleadings reasonably informed plaintiff of claim of usury and the assertion of a legally valid defense, where answer set forth that there was involved a total excess interest charge, the affirmative defenses assert an overcharge in the interest

REFERENCES FOR POINTS IN HEADNOTES
[1] 55 Am Jur, Usury § 2.
[2] 55 Am Jur, Usury §§ 5, 6.
[3] 55 Am Jur, Usury § 162.
[4] 55 Am Jur, Usury § 21 *et seq.*; § 36 *et seq.*
[5] 55 Am Jur, Usury § 161 *et. seq.*
[6] 14 Am Jur, Costs § 10 *et seq.*

rate and the pretrial order states that the issues in the cause
involved the computation of interest claimed by plaintiff
(Court Rules Nos 17, 23 [1945]).

4. SAME—CREDIT PRICE ON COMMODITY SOLD—CASH PRICE.

The exaction of a credit price for a commodity sold in excess
of the legal interest on the cash price is not usurious, but
where the sum agreed to be paid for deferred instalments as
interest exceeds the maximum permitted by law the transac-
tion is usurious.

5. SAME—REMAND—EVIDENCE—AMBIGUOUS CONTRACTS.

Cause is remanded for the taking of additional testimony to
determine whether or not transaction involving the use of
ambiguous instruments was usurious.

6. COSTS—NEITHER PARTY PREVAILING IN FULL.

No costs are allowed in action involving ambiguous instruments,
where cause is remanded for further proceedings and deter-
minations as may be required in accordance with rules relating
to usurious transactions, as neither party has prevailed in
full.

Appeal from St. Joseph; Andrews (Mark S.), J:
Submitted April 3, 1956. (Docket No. 10, Calendar
No. 46,682.) Decided May 14, 1956.

Action by Hillman's, an Indiana corporation,
against Em 'N Al's, a Michigan corporation, Albert
DeLuca, Guy F. Bonfiglio and Theodore M. Bennie
for money claimed due on conditional sales contract
which defendants claim usurious. Judgment for
plaintiffs was followed by order of remittitur. Plain-
tiff appeals. Defendants cross-appeal. Reversed
and remanded.

*Robert E. A. Boyle,* for plaintiff.

*Roy H. Hagerman,* for defendants.

SMITH, J. The case involves a conditional sales
contract, together with payments made, and interest
charged, thereunder. In order to clarify the record,

which does not disclose the entire proceedings on appeal, they are summarized in a footnote hereto.*

The pertinent facts are these: Plaintiff and appellant Hillman's is an Indian corporation engaged in the business of selling chinaware, dishes, and restaurant supplies. It declared, in an action of assumpsit, that defendants and cross appellants Em 'N Al's, a Michigan corporation, and Albert DeLuca, Guy F. Bonfiglio and Theodore M. Bennie, individually and as officers and agents of the defendant corporation, were indebted to plaintiff under a "conditional" contract of sale of restaurant equipment in the sum of $3,913.04, plus interest and costs. The agreement declared upon, submitted as plaintiff's exhibit 1, is dated July 6, 1951. It provides for the sale of specific restaurant equipment, by plaintiff to defendants for the sum of $20,125. In consideration of the sale and delivery of this equipment defendants agreed to pay plaintiff "the sum of $20,125 payable August 1, $1,717, balance $500 per month first payment due 9–1–51 with interest." Attached to the contract of sale was a memorandum, designated as defendants' exhibit 1, which, after specifying the respective purchasers, provided: "Terms: Contract—Subject to 6% after maturity." The equip-

---

* Appeal and cross appeal upon leave granted from an order of the St. Joseph circuit court granting defendants' motion for a new trial unless the plaintiff file a remittitur to the judgment entered in plaintiff's favor. Plaintiff, upon the entry of the aforesaid order of remittitur on August 8, 1955, claimed an appeal as of right. Defendants, on August 15, 1955, likewise claimed a cross appeal as of right, but subsequently, upon discovering that plaintiff had not obtained leave to appeal, withdrew their claim of cross appeal. Plaintiff then filed an application for leave to appeal in this Court, leave being granted, on December 1, 1955, to appeal *nunc pro tunc* as of November 7, 1955. Defendants applied for leave to cross appeal, which was duly granted, but too late to have their claim of cross appeal, and reasons and grounds therefor, printed in the record in compliance with Court Rule, appellees stating that "stipulation is filed because thereof." The claim of cross appeal, and reasons and grounds therefore, have been filed with the Court.

ment was itemized and the amounts computed and totaled as follows:

|                               |            |
|-------------------------------|-----------:|
|                               | "$17,317.00 |
| August 1, to be paid .......... | 1,717.00   |
|                               | 15,600.00  |
| Interest for 3 years .......... | 2,808.00   |
|                               | $18,408.00 |

Balance to be at the rate of $500 per month, first payment due September 1, 1951."

Defendants made the stipulated payment of August 1st, and, according to the terms agreed upon, made monthly payments of $500 through May, 1953. In June, 1953, defendants ceased making their payments and this action followed.

The defendants' answer asserts discontinuance of payments because of an error in the compuation and application to the contract of a sales commission claimed by plaintiff for its sale, as agent, of certain used equipment, and, in addition, because of an overcharge of interest, pleading:

"That on or about July 6, 1951, the date of exhibit A, and after the execution thereof, plaintiff billed to defendants Theodore M. Bennie, Guy F. Bonfiglio and Albert DeLuca for $17,317 due on exhibit A, deducted the first payment thereon of 10% or $1,717 and added the sum of $2,808 for interest at 6% for 3 full years, notwithstanding the payments under exhibit A are $500 per month or with a corresponding reduction of $30 per month interest, or a total of $360 per year or a total excess interest charge of $1,080.00."

In addition, defendants set up affirmative defenses in part as follows:

"1. An agreement with plaintiff for plaintiff to take and sell John Bonfiglio's 'Ben Bon' drive-in

fixtures, equipment and machinery for a minimum of $6,500 net and to remit said sum to John Bonfiglio; and the neglect and refusal of plaintiff to do so;

"2. The arbitrary, erroneous, improper and unwarranted credit of proceeds of sale to said fixtures, equipment and machinery to defendants Theodore M. Bennie, Guy F. Bonfiglio and Albert DeLuca, or to 'Em 'N Al's restaurant';

"3. An overcharge in the commission rate;

"4. An overcharge in the interest rate."

Plaintiff's reply, we note, while denying generally the allegations of defendants' answer, and affirmative defenses, admitted error in the computation of the commission due on the sale of the used equipment and conceded that, in view of its error, defendants were entitled to an additional credit of $550.45 on the amount owed.

At the conclusion of the trial to the court, without a jury, the court adopted substantially plaintiff's theory of the case, holding, in part, that:

"From plaintiff's exhibit 2, it is clear that plaintiff applied the $500 payments and a credit memorandum of May 20, 1952, to the balance of $18,408 and the other purchase of $82.97, and that no deduction was made by the plaintiff for interest from the payments."

And, continuing:

"The court therefore has made a computation which is for the record, to be as follows:

"Total merchandise purchased . . $17,317.00
Down payment acknowledged . . .   1,717.00
Leaving balance of . . . . . . . . . . .  15,600.00
Interest computed at 6 per cent . .   2,808.00
Making a total of . . . . . . . . . . . . .  18,408.00
Plus merchandise purchased . . . .      82.97
Making a total of . . . . . . . . . . .  18,490.97

"Defendants have paid in cash independent of any money in the clerk's hands, $11,600, leaving a balance of $7,490.97. Deducting from this the credit memorandum given to the defendants, as indicated, leaves a balance of $3,913.04, the amount shown on plaintiff's exhibit No. 2. Giving the defendants further credit by way of adjusted commission, leaves owing to the plaintiff, $3,393.39."

It was thereupon ordered that judgment enter in favor of plaintiff for such amount, with costs to be taxed. (This was later amended in the words, "Upon a recomputation it appears that the sum of $3,362.59 is the amount which the court intended to award to the plaintiff at the time of the hearing.")

Defendants thereupon moved for new trial and stay of proceedings. Hearing was had on the motion, following which the court entered an opinion on such motion, adopting defendants' theory of the transaction, stating, in part:

"However, the court will consider defendants' motion for a new trial as it bears on the allowance of $2,808 as interest. Upon reconsideration of this matter the court is satisfied that the defendants are correct.

"The rule adopted in this State for the computation of interest in case of partial payments is to apply the payment to the discharge of matured interest, and the surplus, if any, upon the principal after which interest is computed on the new principal. *Wallace* v. *Glaser*, 82 Mich 190 (21 Am St Rep 556).

"This rule must be considered a part of the conditional sales contract and controls the method of computing interest where partial payments are provided, and where no other valid provision was agreed upon by the parties. As indicated in the pretrial order, the maximum rate of interest should have been limited to 5%. See CL 1948, § 438.51 (Stat Ann § 19.11)."

"Plaintiff is entitled to interest at the rate of 5% per annum upon the sum of $15,600, computed in the manner shown on schedule B of defendants' exhibit No 3, except that defendants are entitled to a credit, as of May 20, 1952, of the sums of $3,577.93 and $550.56. Plaintiff is entitled to interest upon the balance so determined from June 8, 1953 until the date of trial, being April 29, 1955. Plaintiff is entitled to its taxable costs as set forth in plaintiff's bill of costs filed in this court on May 19, 1953 in the sum of $66.50.

"The motion for a new trial is granted unless plaintiff shall, on or before September 1, 1955, file a remittitur for the difference between $3,393.39 and the sum found after computing interest at the rate of 5% per annum in the manner hereinbefore noted."

Pursuant to the court's opinion a conditional order was filed granting defendants' motion for a new trial unless plaintiff file a "remittitur for the difference between $3,393.39 and the sum found after computing interest at the rate of 5% per annum in the manner shown on schedule B of the defendants' exhibit No 3." (This schedule made application of each of the monthly payments of $500 to reflect "distribution as to principal and interest computed at 5% on the balance remaining at each prior payment date.")

Plaintiff appealed and defendants cross-appealed under the circumstances heretofore noted. Plaintiff claims, in part, on appeal, that the trial court erred in reversing its original findings that defendants were indebted to plaintiff in the sum of $3,362.59 as the balance found owing under the contract. Defendants claim, in part, that the trial court erred in finding, as it did, that the defense of usury was not an issue in the case.

The question of usury warrants our primary consideration. Defendants insist that usury was plead-

ed throughout the entire litigation and was properly raised as an issue in the case. The court in its opinion on defendants' motion for a new trial, after discussing its local Court Rule No 9,* found that the plaintiff's claim "that the issue of usury was not raised in the pleadings or at the pretrial hearing, or at the trial, and cannot now be argued as ground for a new trial," was well-founded. Accordingly, the court ruled that usury, "not being an issue in the case, it may not be urged as the basis for a new trial."

Upon these pleadings the learned court was in error. Usury is, generally speaking, "the receiving, securing or taking of a greater sum or value for the loan or forbearance of money, goods, or things in action than is allowed by law." (55 Am Jur, Usury, § 2, p 324.) The usury statute of this jurisdiction (CL 1948, § 438.51 *et seq.* [Stat Ann § 19.11 *et seq.*]), as we noted in *Attorney General* v. *Contract Purchase Corporation,* 327 Mich 636, 642, 643, "is broader in scope than that in many jurisdictions and includes *interest* not only on the loan of money or the extension of pre-existing debts, but also on all contracts and assurances."

Defendants' answer sets forth that there was involved "a total excess interest charge" and the affirmative defenses, as well, assert "an overcharge in the interest rate." The pretrial order states, in part, that "the issues in said cause involve the computation of interest claimed by plaintiff" and also

---

* "Local Court Rule No 9, adopted pursuant to Michigan Court Rule No 35 (1945), provides as follows:

" 'At the conclusion of said pretrial conference the court shall make an order which shall be signed and approved by the respective attorneys which recites the action taken at the conference; the amendments, if any, allowed to the pleadings; the agreements, if any, made by the parties as to any of the matters considered and which limit the issues for trial to those not disposed of by admissions or agreements of counsel; and such order, when entered, shall determine and control the subsequent course of the action unless modified at or before the hearing to prevent manifest injustice.' "

requires that "defendants shall furnish plaintiff the computation prepared by auditor setting forth the payments made by defendants and the interest computed thereon in the manner and according to the claim of defendants." Under these circumstances, although the use of the term "usury" would have contributed to clarity, we are of the opinion that the pleadings reasonably informed the plaintiff of the claims being made and the assertion of a legally valid defense in accordance with Michigan Court Rules Nos 17 and 23 (1945).

Transactions allegedly usurious in nature take many forms. Guile is patent in some, observable not in others. Much depends, as we noted in *Continental National Bank of Chicago* v. *Fleming,* 170 Mich 624, 643, "upon the intention of the lender." The Minnesota court, in *Dunn* v. *Midland Loan Finance Corporation,* 206 Minn 550, 553 (289 NW 411), expressed the problem in these terms:

"Whether a particular transaction is usurious is a fact question, where the evidence is conflicting. Decision is not to be made according to any hard and fast test. The case is not to be determined simply by what the parties represent the transaction to be, but by considering the whole evidence to ascertain whether or not it is in substance a contracting to receive usurious interest for a loan or forbearance of money. The process involves looking through the form to the substance. No device or shift may be employed to conceal the true character of the transaction."

The instruments before us are replete with the ambiguities which have not had resolution, with respect to the charge of usury, by the trial court. Thus we note that the contract declared upon, after listing articles sold, states that they are "valued at Twenty thousand one hundred twenty-five and no/100 Dollars." It then goes on to provide that:

"In consideration of the delivery of said property to me, I have paid said party of the first part, the sum of $——— and agree to pay it the sum of $20,-125 payable August 1, $1,717, balance $500 per month first payment due 9-1-51 with interest and all current taxes which may become due, and attorney fees, promptly on the day appointed, at its office, 117 W. Jefferson, Fort Wayne, Indiana."

Plaintiff, however, tells us that this does not mean what it seems to say, but, rather, that "the phrase 'with interest' in the contract was merely part of the form used by the parties," and that "it was a specified and flat payment of $500—not $500 'with interest.'" Plaintiff never claimed or charged such "interest" and "defendants never paid it." As to the total price charged, defendants' exhibit 1 (which, we note, was not produced at the pretrial hearing) indicates a value for the property sold (less the down payment of $1,717) as $18,408. This sum, however, includes an item described as "interest for 3 years $2,808," which indicates the inclusion of a figure representing 6% upon the entire unpaid balance for a full 3-year term without reduction of interest payments because of reduction in principal indebtedness. The same instrument, however, contains the clause "subject to 6% after maturity," a clause difficult to reconcile with the previously-quoted interest provision.

This case having been tried to the court without a jury we remand the same under Court Rule No 64 for the taking of such additional testimony and the making of such additional findings as may be required for the determination of the usury issue. Under these circumstances we deem it advisable to point out that we have held (*Attorney General* v. *Contract Purchase Corporation, supra*):

"Unless the sale and purchase of property is a mere pretense, the seller may charge a greater price

for goods bought on credit than for cash without rendering the transaction usurious. *Hartwick Lumber Co.* v. *Perlman,* 245 Mich 3; *Keefe* v. *Bush & Lane Piano Co.,* 247 Mich 82.

" 'Exacting a credit price for an automobile in excess of the legal interest on the cash price is not usurious.' *General Motors Acceptance Corp.* v. *Swain* (La Ct of App), 176 So 636."

This principle, however, as expressed is subject to the qualification described in Mr. Justice BOYLES' opinion in *Bird Finance Corporation* v. *Lamerson,* 303 Mich 422, 433, 434 (Although this was a dissenting opinion there was no division in the court as to the finding that usury was involved.) :

"Defendants lastly insist that plaintiff cannot be a holder in due course because the negotiable instrument is usurious. This claim is predicated on the fact that the original cost of the job was to be $800, that Mrs. Lamerson was to and did give her note for $968, payable in equal monthly instalments over a period of 3 years. Defendants say that the difference between the 2 amounts was intended to represent 7% interest on the $800 for 3 years—that the time payments by monthly instalments were increased $168 over the original cash proposal of $800 to add 7% interest. On this theory, the note would be usurious because the principal amount being reduced by monthly payments should correspondingly reduce the interest requirements as payments were made. Interest should be computed only on the balance of principal remaining unpaid after each monthly payment; otherwise it would be usurious because it was figured at the maximum legal rate of interest in this State, 7%. The first payment ($26.89) should draw interest for only 1 month instead of 3 years.

"However, plaintiff insists that the difference between $800 and $968 was the agreed difference between a cash price and a time price, and not an additional charge for interest in advance. If this claim

is established by the record, the note is not usurious because a seller may charge more for goods sold on credit than for cash without rendering the contract usurious. *Hartwick Lumber Co.* v. *Perlman*, 245 Mich 3; *Keefe* v. *Bush & Lane Piano Co.*, 247 Mich 82. However, the record is barren of any proof that the additional charge was agreed upon as a time price. The original order or 'request' signed by Mrs. Lamerson states that the agreed price for the labor and materials was $800, and in it Mrs. Lamerson agrees to execute and deliver a promissory note for $968, 'which amount includes all charges by way of interest, discount or otherwise.' There could be no 'otherwise' charges, and obviously the $968 was intended to cover interest or discount over the cost price of $800. It is significant that this difference— $168—is exactly 7% interest on $800 over the 3-year period covered by the monthly instalments.

" 'Where the principal sum of a loan or debt is made payable in instalments at specified intervals within the full period of the loan, but interest for the full period on the whole principal sum is agreed to be paid, or is taken or withheld by the lender in advance, or is included in the face amount of the note, the transaction is usurious, whether or not the rate of interest stipulated in the contract exceeds the maximum specified by law, if the sum so agreed to be paid or so deducted as interest is greater than interest at the lawful rate on the principal sum for the period for which it is actually lent.' 66 CJ, Usury, § 125, p 205."

Similar expression is found in the case of *E. Tris Napier Company* v. *Trawick*, 164 Ga 781, 782 (139 SE 552):

"If a vendor and vendee agree upon a cash price of property which is the subject matter of the sale, but the sale itself is not for cash but is distinctly on a credit until a particular time in the future, the transaction will not be rendered usurious because the vendor in order to make a time price on the property

adds to the cash price another sum and includes the total amount thus arrived at in a promissory note which the purchaser gives, securing the same by a mortgage on realty. The law recognizes the right of a seller to make a difference in his cash price and his time price for his property; and though in a given instance this difference may exceed 8%, the law as to usury is not applicable. *Rushing* v. *Worsham,* 102 Ga 825 (30 SE 541). See, also, *Graeme* v. *Adams,* 23 Gratt (64 Va) 225 (14 Am Rep 130, 135); *Davidson* v. *Davis,* 59 Fla 476 (52 So 139, 28 LRA NS 102, 20 Ann Cas 1130); 29 Am & Eng Enc Law (2d ed), 478; 27 RCL 214, 215. If, however, the property is sold at a cash price, and time is given by the vendor to the purchaser upon a portion of the purchase-money, and a greater rate of interest than that allowed by law is charged on such deferred payments, the contract is usurious."

We are not unmindful that the defendants' exhibit 1 lists the additional charge of $2,808 solely as "interest for 3 years" and not as a charge for service or administration. See *Ferguson* v. *Grand Rapids Land Contract Co.,* 242 Mich 314 (63 ALR 820). Nor, however, are we unmindful that the instruments involved, as heretofore noted, are ambiguous, particularly in the use of the term "interest." The trial court must ascertain the true intent of the parties in the light of the surrounding circumstances.

Reversed and remanded under Court Rule No 64 (1945), for a determination of the usury issue and such further proceedings and determinations as may be required in accordance herewith. No costs, neither party having prevailed in full.

DETHMERS, C. J., and SHARPE, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.

The late Justice REID took no part in the decision of this case.