HEBERLING v PALMER'S MOBILE FEED SERVICE, INC

Docket No. 56680. Submitted April 19, 1982, at Lansing.—Decided
June 28, 1982. Leave to appeal applied for.

Paul Heberling and his wife Mary Heberling owned a dairy farm
in Sanilac County. The Heberlings became indebted to Palmer's
Mobile Feed Service, Inc., for $30,000 worth of cattle feed. Paul
Heberling subsequently obtained a loan for the amount of the
indebtedness from Sanilac County Bank. William Palmer, presi-
dent and sole shareholder of defendant, claimed at trial that he
was required to sign a separate guarantee for the $30,000 note.
Later, the note was paid to Sanilac County Bank by the
Heberlings and discharged. Thereafter, the Heberlings became
indebted to Palmer's for an additional $80,000 worth of cattle
feed. The Heberlings signed a promissory note for $80,000 in
favor of Palmer's. The note was due in two years and was to
bear interest at the rate of 11 percent per annum. The Heber-
lings also executed a second mortgage to their property in favor
of Palmer's. The first mortgage was foreclosed and the property
was sold at a sheriff's sale. In order to obtain financing to
redeem the property, the Heberlings had to remove the second
mortgage. The Heberlings paid Palmer's the principal balance
due on the $80,000 and 11 percent interest but reserved the
right to contest payment of the interest. The Heberlings
brought suit for the interest in Sanilac Circuit Court against
Palmer's claiming that the 11 percent interest rate on the
$80,000 promissory note was usurious. Palmer's claimed that
the second mortgage secured an indebtedness of $110,000,
arrived at by aggregating the $80,000 note and the claimed
$30,000 guarantee, and was within the exception to the statute
on usury for transactions over $100,000 on liens against real
property other than a single family residence. The court, Allen
E. Keys, J., entered a judgment for defendant on a jury verdict
of no cause of action. The plaintiffs appeal. *Held:*

The mortgage at issue did not secure "any note, bond, or
other indebtedness of $100,000" or more within the meaning of
the statute on usury. Plaintiffs' obligation to defendant corpora-

REFERENCE FOR POINTS IN HEADNOTE
45 Am Jur 2d, Interest and Usury §§ 111, 112.

tion on the $80,000 promissory note and conditional obligation to its president and sole shareholder on the $30,000 guarantee should not be aggregated to reach the $100,000 exemption. A note or bond represents an unconditional obligation to pay a sum certain. The plaintiffs were unconditionally obligated to pay the $30,000 note to Sanilac County Bank, not the defendant. The 11 percent interest rate paid by the plaintiffs on the $80,000 promissory note exceeds the 7 percent ceiling set out in the statute.

Reversed.

INTEREST — USURY.

The entire transaction should be considered by a court in determining whether a particular transaction is usurious; the substance of the transaction, rather than the form, should govern because otherwise the effect of usurious transactions may be avoided by other paper or security for the indebtedness.

*Cubitt, Cubitt & Trowhill,* for plaintiffs.

*Walpole, Holmes & Schrope,* for defendant.

Before: M. J. KELLY, P.J., and CYNAR and G. R. COOK,* JJ.

PER CURIAM. Plaintiffs appeal as of right from a jury verdict of no cause of action in favor of defendant.

Plaintiffs owned a dairy farm in Sanilac County. Defendant corporation sold cattle feed to area farmers. Sometime in 1974, plaintiffs became indebted to defendant for $30,000 worth of feed. Plaintiff Paul Heberling obtained a loan for the amount of indebtedness from Sanilac County Bank. The money received from plaintiff from the bank was paid to defendant to discharge the debt.

William Palmer, president and sole shareholder of defendant corporation, testified that when the loan was obtained, he was required by the bank to sign a separate document as guarantor of the note.

* Circuit judge, sitting on the Court of Appeals by assignment.

Palmer's testimony was corroborated by Cecil Hamill, executive vice president of Sanilac County Bank. Plaintiff Paul Heberling stated that William Palmer never guaranteed the debt, or at least Heberling was not aware of a guarantee. The loan guarantee was not produced at trial. Later, the note was paid to Sanilac County Bank by plaintiffs and discharged.

By April, 1976, plaintiffs were indebted to defendant corporation for an additional $80,000 worth of cattle feed. On April 30, 1976, plaintiffs signed a promissory note for $80,000 in favor of defendant corporation. That note was to be due two years from April 30, 1976, and was to bear interest at the rate of 11 percent per annum. Plaintiffs also executed a mortgage, second to another mortgage, in favor of defendant. The mortgage provided:

"[Plaintiffs mortgage and warrant certain real property to defendant] to secure the repayment of $110,000.00 * * * [namely,] $80,000.00 with interest at Eleven Percent (11%) [and] $30,000.00 with interest at Nine Percent (9%) (Given as collateral security for a note in this amount due Sanilac County Bank of which mortgagee is a guarantor)."

At the trial, plaintiff Paul Heberling stated that when he signed the mortgage his intent was to give William Palmer a total of $110,000 security for two feed bills.

The first mortgage was foreclosed and the property was sold at a sheriff's sale. In order to obtain financing to redeem the property, it was necessary to remove defendant's second mortgage. Plaintiffs paid defendant the principal balance due on the $80,000 and interest computed at 11 percent, but reserved the right to contest payment of the interest.

Plaintiffs sued defendant for the interest, claiming that the 11 percent interest rate on the promissory note was usurious, pursuant to MCL 438.31; MSA 19.15(1). Defendant claimed that the second mortgage secured an indebtedness of $110,000, namely the $80,000 note and $30,000 guarantee, and was therefore within the exception set out in MCL 438.31c(9); MSA 19.15(1c)(9).

At the close of proofs, plaintiffs moved for a directed verdict, arguing that the obligation secured by the mortgage was for $80,000. Further, plaintiffs argued that the $30,000 note was an obligation to Sanilac County Bank and could not be added to the $80,000 note to reach the $100,000 exemption. Plaintiffs' motion was denied, and the jury found in favor of defendant.

MCL 438.31; MSA 19.15(1) sets out a 7 percent per annum ceiling on interest rates. Exceptions are set out in MCL 438.31c; MSA 19.15(1c). At the time of the transaction at issue, subsection (9) provided:

"(9) For the period ending on December 31, 1977, the parties to any note, bond, or other indebtedness of $100,000.00 or more, the bona fide primary security for which is a lien against real property other than a single family residence, or the parties to a land contract of such amount and nature, may agree in writing for the payment of any rate of interest." 1973 PA 22.

We find as a matter of law that the mortgage at issue did not secure any bond, note, or indebtedness over $100,000 within the meaning of the statute. Further, plaintiffs' obligation to defendant corporation on the $80,000 promissory note and conditional obligation to its president and sole shareholder on the $30,000 guarantee cannot be aggregated to reach the $100,000 exemption.

We reject defendant's claim that the mortgage, in and of itself, represents "other indebtedness" within the meaning of subsection (9). A mere recital of the obligation to be secured by the mortgage, as in the present case, does not represent a covenant to pay and set the terms of the obligation. Further, in determining whether a particular transaction is usurious, the entire transaction must be considered. The substance of the transaction, rather than the form, governs. Otherwise, the effect of usurious transactions may be avoided by other paper or security for the indebtedness. See *Continental National Bank v Fleming*, 170 Mich 624, 643; 134 NW 656 (1912); *Hillman's v Em 'N Al's* 345 Mich 644, 652; 77 NW2d 96 (1956).

Assuming *arguendo* that obligations of indebtedness to one creditor can be aggregated to reach the $100,000 exemption, we find that the Legislature did not intend to include a conditional obligation to a guarantor within the meaning of "note, bond, or other indebtedness". A careful reading of the statute reveals that the Legislature intended to exempt notes, bonds, or other instruments representing indebtedness similar to notes or bonds from the 7 percent ceiling, where the amount borrowed exceeds $100,000. A note or bond represents an unconditional obligation to pay a sum certain. Plaintiffs were unconditionally obligated to pay the $30,000 note to Sanilac County Bank, not defendant. Their obligation to defendant corporation as guarantor of the $30,000 note would not arise until and unless defendant is held liable on the note.

Because the 11 percent interest paid by plaintiffs on the $80,000 promissory note exceeds the 7 percent ceiling set out in MCL 438.31c, we reverse. Due to the disposition of the first issue, we do not reach plaintiffs' claim of instructional error.

Reversed.